**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JANET F. JEFFRIES | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06-707-JJF |
| v. | : | |
| | : | |
| JOHN E. POTTER, POSTMASTER | : | |
| GENERAL, UNITED STATES POSTAL | : | |
| SERVICE | : | |
| | : | |
| Defendant. | : | |
| | : | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COLM F. CONNOLLY
United States Attorney

By: Seth M. Beausang (I.D. No. #4071)
Assistant United States Attorney
1007 N. Orange Street, Suite 700
Wilmington, Delaware 19801
(302) 573-6277

Dated: August 11, 2008.

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF
      EXHAUSTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    *Plaintiff Failed To Exhaust Her Hostile Work Environment Claim.* . . . . . . . . . . 3

      B.    *Plaintiff Failed To Exhaust Her Retaliation Claim.* . . . . . . . . . . . . . . . . . . . . . . 6

II.   IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM. . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    *Plaintiff Has Failed To Produce Evidence Of An Adverse Employment Action.* . 10

      B.    *Plaintiff Has Failed To Produce Evidence Of A Materially Adverse Action.* . . . . 13

      C.    *Plaintiff Has Failed To Show Racially Disparate Treatment
            With Respect To The Postal Service's Investigation Of The
            Incident Between Plaintiff And Ms. Thomas.* . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.    *Plaintiff Has Also Failed To Show Any Connection Between Her Transfer And
            Either Her Race Or Her EEOC Activity.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE**

Anjelino v. The New York Times Co.,
    200 F.3d 73 (3d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Amro v. Boeing Co.,
    232 F.3d 790, 797 (10th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Atkinson v. LaFayette College,
    460 F.3d 447 (3d Cir. 2006).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Burlington Northern & Santa Fe Ry. Co. v. White,
    126 S.Ct. 2405 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Burns v. Potter,
    No. 1:04-CV-2793, 2007 WL 406201 (M.D. Pa. Feb. 2, 2007). . . . . . . . . . . . . . . . . . . 4

EEOC v. Metal Serv. Co.,
    892 F.2d 341 (3d Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Faragher v. City of Boca Raton,
    524 U.S. 775 (1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hanani v. State of NJ,
    No. 03-3111 GEB, 2005 WL 1308231 (D. N.J. May 31, 2005),
    aff'd on other grounds by, No. 05-3157, 205 Fed. App'x 71 (3d Cir. Nov. 9, 2006).. . . . 9

Jenson v. Potter,
    435 F.3d 444 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jones v. Sch. Dist. of Phila.,
    198 F.3d 403 (3d Cir. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

Moore v. City of Phila.,
    461 F.3d 331 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Nat'l R.R. Passenger Corp. v. Morgan,
    536 U.S. 101 (2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ostapowicz v. Johnson Bronze Co.,
    541 F.2d 394 (3d Cir. 1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**PAGE**

Robinson v. Dalton,
    107 F.3d 1018 (3d Cir. 1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

Seldon v. Nat'l RR Passenger Corp.,
    452 F. Supp. 2d 604 (E.D. Pa. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Storey v. Burns Intern. Sec. Servs.,
    390 F.3d 760 (3d Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11.

Torre v. Casio, Inc.,
    42 F.3d 825 (3d Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Waiters v. Parsons,
    729 F.2d 233 (3d Cir. 1984).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

**OTHER AUTHORITIES**                                                    **PAGE**

29 C.F.R. § 1601.12.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

29 C.F.R. § 1614.108.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

29 C.F.R. § 1614.109.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## PRELIMINARY STATEMENT

Plaintiff's Complaint seeks to hold the Postmaster General (the "Postal Service") liable for the manner in which it investigated an incident involving Plaintiff and her co-worker, Delores Thomas.  Plaintiff also takes issue with the Postal Service's failure to transfer Plaintiff to some job where she would not have to interact with Ms. Thomas.  When the Postal Service did assign Plaintiff to a job where she would not have to interact with Ms. Thomas – i.e., when it promoted her to a Full Time Regular ("FTR") position, and assigned her to the night shift (along with all the other newly promoted employees, black and white) – Plaintiff still was not happy.  According to Plaintiff, her transfer to the night shift, even though it included a promotion, was a discriminatory and retaliatory act.  Finally, Plaintiff complains that she works in a hostile environment caused by increased supervision and nitpicking from her supervisors, and the fact that some of her co-workers have made sporadic comments toward her that were mean.

Missing from the summary judgment record is evidence that the Postal Service took an adverse employment action, or materially adverse action, against Plaintiff.  Indeed, all of the things that Plaintiff complains about are, as a matter of law, insufficient to state a claim for discrimination or retaliation.

Also missing from the record is evidence that the Postal Service treated Plaintiff differently based on her race or EEOC activity.  The only disparate treatment that Plaintiff alleges is that the Postal Service is more diligent when it investigates complaints by black employees, as compared to when it investigates complaints by white employees.  But how the Postal Service investigates employees is irrelevant because it is well-settled that merely investigating an employee is not actionable under the federal employment discrimination laws.  In any event, the evidence shows that the Postal Service does not discriminate based on race when it comes to

investigating or disciplining its employees.  With respect to Plaintiff's discriminatory transfer

claim, there is no evidence connecting Plaintiff's promotion and transfer to the night shift with

her EEOC activity or her race.

Finally, the majority of Plaintiff's claims should be dismissed because they are not

exhausted.  Plaintiff's EEOC complaint alleged "color" discrimination only.  The affidavit that

Plaintiff attached to her EEOC complaint, like the affidavit she submitted during the Postal

Service's investigation of her EEOC complaint, focused on the Postal Service's supposed failure

to properly investigate the incident between Plaintiff and Ms. Thomas, which Plaintiff attributed

to "racism."  Plaintiff's affidavits made only a fleeting reference to a "hostile environment."

They did not mention any of the increased supervision and nitpicking that Plaintiff claims have

created the hostile work environment.  The EEOC record also contains no allegations that the

Postal Service retaliated against Plaintiff for her EEOC activity.  When the Postal Service wrote

to Plaintiff to confirm that she was raising a disparate treatment, race discrimination claim only,

it invited Plaintiff to respond if she disagreed, but Plaintiff did nothing.  When her case was

presented to an EEOC administrative judge, Plaintiff, through her attorney, went so far as to deny

that she was raising a hostile work environment claim.  As a result, Plaintiff's argument that the

EEOC or Postal Service should reasonably have been expected to investigate or adjudicate a

hostile work environment or retaliation claim, *when she failed to raise those claims and then*

*repeatedly confirmed that she was not raising those claims*, defies common sense and is wrong

as a matter of law.

For all of these reasons, and as explained in the Postal Service's Opening Brief and

below, the Postal Service is entitled to summary judgment of Plaintiff's Complaint.

2

**ARGUMENT**

**I.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR LACK OF EXHAUSTION.**

The purposes of the exhaustion requirement are to "promote administrative efficiency, 'respect executive autonomy by allowing an agency the opportunity to correct its own errors,' provide courts with the benefit of an agency's expertise, and serve judicial economy by having the administrative agency complete the factual record." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). Plaintiff's EEOC complaint alleged "color" discrimination only. The Postal Service did not investigate any other claim and therefore had no opportunity to correct its errors, if any, with respect to any other claim. No factual record was developed with respect to any other claim. Plaintiff, through her attorney, went so far as to deny that she had raised any claim other than her disparate treatment, race discrimination claim. Under the circumstances, as explained in the Postal Service's Opening Brief and below, the only claim in Plaintiff's Complaint that is exhausted is Plaintiff's disparate treatment, race discrimination claim.

**A.    *Plaintiff Failed To Exhaust Her Hostile Work Environment Claim.***

In its Opening Brief, the Postal Service explained why Plaintiff's hostile work environment claim should be dismissed for lack of exhaustion. (Op. Br. at 16-18.)[1] Plaintiff's only mention of such a claim was one fleeting reference buried in the affidavit she attached to her EEOC complaint. That affidavit otherwise focused exclusively on the Postal Service's alleged

---

[1]The Postal Service's Opening Brief is cited as Op. Br. at ___. The Plaintiff's Answering Brief is cited as Ans. Br. at ___. The Postal Service's Appendix is cited as Def.'s App'x at ____. The Plaintiff's Appendix is cited as Pl.'s App'x at ___.

failure to properly investigate the incident between Plaintiff and Ms. Thomas.[2]  As the Postal

Service explained in its Opening Brief, making one fleeting reference to the EEOC about a

hostile work environment claim is not enough to exhaust that claim.[3]  See Burns v. Potter, No.

1:04-CV-2793, 2007 WL 406201, at *4 n.17 (M.D. Pa. Feb. 2, 2007).

But there is another, more fundamental reason that Plaintiff failed to exhaust her hostile

work environment claim: *Plaintiff repeatedly confirmed that she was not raising a hostile work*

*environment claim.*  (See Op. Br. at 11, 16-17.)  First, when the Postal Service wrote Plaintiff to

confirm that she was only raising a disparate treatment, race discrimination claim, Plaintiff failed

to respond even though the Postal Service invited Plaintiff to disagree.  (Id. at 11.)  Not

surprisingly, the Postal Service's investigation developed facts related to Plaintiff's disparate

treatment claim only.  (See Ex. A (the Postal Service's "Investigative Report").)[4]  Plaintiff,

through her attorney, went so far as to correct the EEOC administrative judge who thought

---

[2]The affidavit that Plaintiff submitted to the Postal Service during it's investigation contained the same fleeting reference.  (See Ans. Br. at 21.)

[3]Plaintiff's attempt to reproduce in her brief the portion of her affidavit in which she made the fleeting reference to a hostile work environment (Pl.'s Br. at 21), is somewhat misleading.  The reproduction in Plaintiff's brief does not show that Plaintiff's affidavit contained twelve bullet points, the first eleven of which focused on the Postal Service's alleged failure to properly investigate the incident involving Plaintiff and Ms. Thomas.  The twelfth bullet point alleged that Plaintiff "continue[s] to work in a hostile environment," but did not allege any of the facts supporting that claim – namely, the increased supervision and nitpicking that Plaintiff claims created the hostile environment.  Taken in context, Plaintiff's fleeting reference in her affidavit to a hostile work environment did not appear to allege anything different from her claim that the Postal Service failed to properly investigate the incident during which Plaintiff was allegedly assaulted by Ms. Thomas.

[4]The Postal Service is directed to investigate EEOC complaints made by its employees and create a factual record with respect to those claims.  29 C.F.R. §§ 1614.108(a) & (b).  After the investigation the complainant is entitled to a hearing before an EEOC administrative judge. 29 C.F.R. § 1614.109.

Plaintiff had raised a hostile work environment claim. (Op. Br. at 16-17 ("Accordingly, [Plaintiff] contends, as the record supports, that [Plaintiff's] Complaint of Discrimination is based on the claim of disparate treatment and not 'hostile work environment harassment' . . . .").) Under the circumstances, it defies common sense to suggest that the Postal Service or the EEOC should reasonably have been expected to investigate or adjudicate a hostile work environment claim when Plaintiff repeatedly confirmed that she was not raising such a claim. Cf. Atkinson v. LaFayette College, 460 F.3d 447, 453 (3d Cir. 2006) (holding that the plaintiff did not exhaust her Title VII retaliation claim because in her response to an EEOC questionnaire she "clarified that the retaliation she allegedly suffered stemmed only from her opposition to gender inequity in the funding of sports programs at Lafayette College" which is not a "claim predicated on activities protected under Title VII").[5]

In her Answering Brief, Plaintiff does not even attempt to explain why she failed to respond when the Postal Service wrote her to confirm that she was only raising a disparate treatment, race dicrimination claim. (See Op. Br. at 11.) For that reason alone, Plaintiff's suggestion that she exhausted a hostile work environment claim (or, indeed, that she exausted

---

[5]The Third Circuit's decision in Anjelino v. The New York Times Co., 200 F.3d 73 (3d Cir. 1999), which Plaintiff cites, does not apply here. In Anjelino, the Third Circuit found that the plaintiffs had exhausted their hostile work environment claim, even though the plaintiffs referred in their EEOC complaint to an "abusive atmosphere," rather than to a "hostile work environment," because the Third Circuit found those terms to be "interchangeable." Id. at 94-95. As a result, the court concluded that a hostile environment claim was within the scope of the plaintiffs' EEOC complaint. Id. Here, by contrast, Plaintiff made only a fleeting reference to a hostile environment claim, did not respond when the Postal Service wrote to confirm that she was only raising a disparate treatment, race discrimination claim, and then specifically told the EEOC (through her attorney) that she was not raising a hostile work environment claim. It was plainly reasonable for the Postal Service and EEOC to take Plaintiff at her word and not investigate or adjudicate a hostile work environment claim.

*any* claim other than her disparate treatment claim) should be rejected.

Plaintiff's hostile work environment claim should also be dismissed because her attorney told the EEOC that Plaintiff was not raising such a claim. Plaintiff tries to downplay her attorney's statement by arguing that her attorney "was in fact forced to work within the limitations *set by the EEO.*" (Ans. Br. at 28.) Plaintiff appears to be suggesting that her attorney had no choice but to deny that Plaintiff was raising a hostile work environment claim because the only claim the Postal Service accepted for investigation was Plaintiff's disparate treatment claim. That argument should be rejected. Besides the fact that Plaintiff was given an opportunity to dispute how the Postal Service characterized her claim (and failed to do so), Plaintiff could have amended her EEOC complaint to include allegations supporting her hostile work environment claim if she thought she had raised such a claim before. See 29 C.F.R. § 1601.12(b).[6] Thus, the notion that Plaintiff was somehow precluded from bringing a hostile work environment claim during the EEOC proceedings is simply not true. For all of these reasons, the Court should dismiss Plaintiff's hostile work environment claim for lack of exhaustion.

### B.    *Plaintiff Failed To Exhaust Her Retaliation Claim.*

The Postal Service also explained in its Opening Brief why Plaintiff failed to exhaust her retaliation claim. (Op. Br. at 16.) In response, Plaintiff points to the following sentence from her EEOC affidavit as the sole evidence that she exhausted her retaliation claim: "I felt threatened by

---

[6]Plaintiff also could have filed a new EEOC complaint and included her hostile work environment claim as late as July, 2005. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002) ("A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period."); (Op. Br., Pl.'s App'x at 81 (Plaintiff's diary alleging harassment through January 21, 2005, meaning Plaintiff could have pursued her hostile work environment claim within 180 days of that date).)

Delores Thomas and her allies' retaliation." (Ans. Br. at 21.) Read in context, however, that sentence refers to nothing more than Plaintiff's claim that Ms. Thomas and her friends made sporadic comments towards her that were mean in the days following the incident between Ms. Thomas and Plaintiff. It did not reasonably alert the Postal Service to the retaliation allegations that Plaintiff makes in her Complaint – i.e., that the Postal Service's *management* retaliated against Plaintiff for *her EEOC activity* by "nitpick[ing]" her, giving her "excessive corrective instructions," and transferring her to the night shift in connection with her promotion.[7] (See Compl. ¶ 24); see also Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976) ("[T]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

   The Third Circuit has expressly declined to adopt a per se rule "that all claims of 'retaliation' against a discrimination victim based on the filing of an EEOC complaint are 'ancillary' to the original complaint, and that therefore no further EEOC complaint need be filed." Robinson, 107 F.3d at 1024. The Third Circuit has "identified two circumstances in which events subsequent to a filed complaint may be considered as fairly encompassed within that complaint, either where the incident (1) falls within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC 'investigation which arose out of it.'" Id. at 1025 (quoting Waiters v. Parsons, 729 F.2d 233, 235 (3d Cir. 1984)). Courts should "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before

---

   [7]Not suprisingly, given that during the EEOC proceedings Plaintiff never alleged retaliation by management, or retaliation for her EEOC activity, the Postal Service did not investigate these claims. (See Ex. A.)

determining that a second complaint need not have been filed." Id.  The determination turns on whether the additional charges "may fairly be considered explanations of the original charge and growing out of it."  Anjelino, 200 F.3d at 94.

In Waiters, for example, the plaintiff had filed a formal EEOC complaint alleging that her employer retaliated against her for her prior EEOC activity.  Waiters, 729 F.2d at 235.  That complaint was investigated and the EEOC district director "found evidence of retaliatory intent in a pattern of actions by the [plaintiff's employer]."  Id. at 238.  The plaintiff was subsequently fired and brought a Title VII action in federal district court, alleging illegal retaliation.  Id. at 235.  The Third Circuit concluded that the plaintiff had exhausted her retaliation claim, even though she had not brought a new EEOC complaint alleging that her discharge was retaliatory.  Id. at 238.  The court so found because the plaintiff's "core grievance" – i.e., retaliation for the plaintiff's EEOC activity – was the same in both her previous EEOC complaint and her federal claim.  Id.

Here, in stark contrast to Waiters, the "core grievance" in Plaintiff's EEOC complaint – i.e., that the Postal Service's allegedly failed to diligently investigate the incident between Plaintiff and Ms. Thomas – is totally unrelated to the retaliation claim that Plaintiff now brings – i.e., alleged retaliation by "nitpick[ing]," giving "excessive corrective instructions," and transferring Plaintiff to the night shift in connection with her promotion.  (Compl. ¶ 24.) Plaintiff's statement in her EEOC affidavit that "I felt threatened by Delores Thomas and her allies' retaliation" does not in any way allege retaliation for Plaintiff's *EEOC activity*.  Notably, that statement alleges that Plaintiff Ms. Thomas and her allies threatened Plaintiff on November 14, 2003 (see Ans. Br., Pl's App'x at A-86), which was three days after the incident with Ms.

8

Thomas and before Plaintiff even filed an EEOC claim.  Read in context, Plaintiff's statement

about "retaliation" by Ms. Thomas and "her allies" in her EEOC affidavit merely refers to

Plaintiff's allegations that Ms. Thomas and certain other coworkers were mean to Plaintiff in the

days following the incident between Plaintiff and Ms. Thomas on November 11, 2003.

      This case presents facts very similar to those presented in Hanani v. State of NJ, No. 03-

3111 GEB, 2005 WL 1308231 (D. N.J. May 31, 2005), aff'd on other grounds by, No. 05-3157,

205 Fed. App'x 71 (3d Cir. Nov. 9, 2006).  In Hanani, the plaintiff's EEOC complaint alleged

that her employer discriminated against her based on race when it denied plaintiff a promotion in

favor of a white co-worker.  Hanani, 2005 WL 1308231, at *14.  The plaintiff then filed a

complaint in federal court alleging, among other things, that her employer retaliated against her

for her EEOC activity by assigning the plaintiff more work and harassing her.  Id.  The district

court examined the plaintiff's EEOC complaint and concluded that the plaintiff's "core grievance

was not retaliation."  Id.  Accordingly, the district court concluded that the plaintiff's retaliation

claim was not exhausted because "it is unreasonable to assume that the EEOC would have

investigated any conduct relating to Plaintiff's retaliation claims."  Id.  Here, also, it would have

been unreasonable to expect the Postal Service or EEOC to investigate or adjudicate Plaintiff's

retaliation claims based on the disparate treatment allegations in Plaintiff's EEOC affidavit.

      To the extent Plaintiff's retaliation claim is premised on her co-workers' harassment of

her, that is theoretically a viable claim if the harassment was severe and pervasive enough to

create a hostile work environment.  See Moore v. City of Phila., 461 F.3d 331, 341 (3d Cir.

2006).  However, that claim is not exhausted because, as explained above, Plaintiff did not

exhaust a hostile work environment claim – in fact, she denied that she was raising one before

the EEOC.[8]  For all of these reasons, Plaintiff's retaliation claim should be dismissed as

unexhausted.[9]

## II.    IN THE ALTERNATIVE, PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

### A.    *Plaintiff Has Failed To Produce Evidence Of An Adverse Employment Action.*

In its Opening Brief, the Postal Service explained that the harms that Plaintiff complains

about are, as a matter of law,  not "adverse employment actions."  (Op. Br. at 19-24.)  As a result,

Plaintiff's discrimination claims should be dismissed.

Plaintiff responds that adverse employment actions "are not rigidly limited to specified

categories of employer conduct," (Ans. Br. at 32), and claims three acts may qualify.  First,

Plaintiff claims that the Postal Service's failure to transfer her to a job away from Ms. Thomas is

actionable.  (Id.)  Next, Plaintiff claims that the Postal Service's decision to temporarily assign

Plaintiff to a different shift in connection with Plaintiff's promotion to FTR is actionable.  (Id. at

32-33.)  Finally, Plaintiff claims that the "sustained existence of a hostile environment"

constituted an adverse employment action in this case.  Plaintiff is wrong on each point.

The Postal Service's purported failure to transfer Plaintiff to a job away from Ms.

Thomas is not actionable because Title VII does not require employers to transfer an employee

_____

[8]As explained below, Plaintiff's hostile work environment claim should be dismissed for failure to state a claim even if she had exhausted it.  (See infra at 12-13; see also Op. Br. at 26-28.)

[9]The Postal Service pointed out in its Opening Brief that Plaintiff failed to exhaust her gender and national origin discrimination claims, and Plaintiff does not appear to dispute that. Moreover, during her deposition, Plaintiff abandoned her gender and national origin discrimination claims.  (Op. Br. at 19.)  Thus, Plaintiff's gender and national origin discrimination claims should also be dismissed

merely because the employee does not like one of his or her co-workers. Employers are not required to protect employees from the "the ordinary tribulations of the workplace, such as[, in the context of a sexual harassment claim,] the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). In short, the federal employment laws do not set forth "a general civility code for the American workplace." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

The one failure-to-transfer case that Plaintiff cites in support of her claim, Seldon v. Nat'l RR Passenger Corp., 452 F. Supp. 2d 604 (E.D. Pa. 2006), does not apply here. In Seldon, the court found that the plaintiff was subjected to an adverse employment action when her employer refused (allegedly, for discriminatory reasons) to allow the plaintiff to work from home like it had allowed other employees. Seldon, 452 F. Supp. 2d at 609. Obviously, allowing an employee to work form from home is an act that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Storey v. Burns Intern. Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004). The Postal Service's supposed refusal to isolate Plaintiff from Ms. Thomas, who Plaintiff did not like, is one of the "the ordinary tribulations of the workplace" that the federal employment laws do not regulate. Thus, Seldon does not apply.

In its Opening Brief, the Postal Service also explained why the Postal Service's decision to temporarily assign Plaintiff to the night shift in connection with her promotion to FTR is not an adverse employment action. (See Op. Br. at 23-24.) In response, Plaintiff cites two decisions from the Third Circuit that do not apply here because the plaintiffs in those cases (in contrast to this case) *could* point to evidence that they suffered serious and tangible consequences from the transfers they challenged. See Jones v. Sch. Dist. of Phila., 198 F.3d 403, 412 (3d Cir. 1999)

11

(finding that the plaintiff suffered an adverse employment action because his employer transferred him to a school that had a reputation of being a "difficult school" and where the plaintiff could not teach physics); Torre v. Casio, Inc., 42 F.3d 825, 835 (3d Cir. 1994) (finding that the plaintiff suffered an adverse employment action because his employer transferred him to a "dead-end position from which he was terminated shortly thereafter"). Here, by contrast, Plaintiff is complaining about an employment action whereby she was promoted to FTR (and, in connection therewith, given numerous benefits such as a guaranteed eight hours of work each day with two days off, medical insurance, vacations, and the ability to bid on other jobs at the USPS (see Op. Br. at 9)), and temporarily assigned to the night shift for what turned out to be nine or ten months. That cannot be considered an adverse employment action. Cf. Amro v. Boeing Co., 232 F.3d 790, 797 (10th Cir. 2000) (holding that the plaintiff did not suffer an adverse employment action from a several-month delay in obtaining a desired transfer).

Finally, Plaintiff's suggestion that she has provided evidence of a hostile work environment (Ans. Br. at 33), should also be rejected. The Postal Service explained in its Opening Brief that the acts Plaintiff complains about – i.e., increased supervision, nitpicking, and sporadic, unwelcome comments[10] – do not rise to the level where courts have found an actionable hostile work environment. (See Op. Br. at 19-23; 26-28); compare Jenson v. Potter, 435 F.3d 444, 447 (3d Cir. 2006) (finding that the plaintiff was subjected to a hostile work environment because her co-workers "pepper[ed]" her "with insults" two to three times a week for nineteen months, "threatened her by driving U-Carts toward her at a rapid pace," and twice scratched her

_____

[10]Plaintiff testified that Ms. Thomas called her a "bitch" countless times during the days following the incident, a "baby" more than once, and that someone standing behind Plaintiff said "white honky bitch" one time. (Op. Br. at 27.)

car with a key and spit and spilled coffee on it).  For all of these reasons, Plaintiff's claim that she has produced evidence of an adverse employment action should be rejected.

      **B.**    ***Plaintiff Has Failed To Produce Evidence Of A Materially Adverse Action.***

Plaintiff's claim that she has produced evidence that she suffered a "materially adverse action" in retaliation for her EEOC activity should also be rejected.  To support her retaliation claim, Plaintiff points to the same acts – i.e., the increased supervision, nitpicking, and sporadic comments – that she claims created a hostile work environment.  (Ans. Br. at 34.)  However, in Burlington Northern, the Supreme Court specifically excluded those types of acts when it discussed what could constitute a "materially adverse action."  See Burlington Northern, 548 U.S. at 68 (stating that Title VII does not create "a general civility code for the American workplace" and "personality conflicts at work that generate antipathy," "'snubbing' by supervisors and co-workers," and "petty slights, minor annoyances, and simple lack of good manners" are normally not enough to state a claim for Title VII retaliation) (quotations omitted). As a result, Plaintiff's retaliation claim should be dismissed.

      **C.**    ***Plaintiff Has Failed To Show Racially Disparate Treatment With Respect To The Postal Service's Investigation Of The Incident Between Plaintiff And Ms. Thomas.***

The Postal Service explained in its Opening Brief that Plaintiff's discrimination claim should also be dismissed because Plaintiff has failed to raise an inference that the Postal Service discriminated against Plaintiff based on her race when it investigated the incident between Plaintiff and Ms. Thomas.  (Op. Br. at 24-26.)  Lacking direct evidence of racial discrimination, Plaintiff claims that the Court should find an inference of racial discrimination based on how the Postal Service has investigated complaints by black employees, as compared to how the Postal

13

Service investigated Plaintiff's complaint about Ms. Thomas.  Although Plaintiff claims that the Postal Service "occasionally does the right thing" and investigates complaints by both black and white employees, Plaintiff claims that she has nevertheless shown sufficient evidence of disparate treatment.  (Ans. Br. at 34.)  This claim should be rejected.

Even the investigations that Plaintiff cites in her Answering Brief show that the Postal Service did not treat Plaintiff differently.  For example, Plaintiff claims that when Lynette Marrow, a black employee, complained about a co-worker, the Postal Service "immediately investigated" and took statements.  (Ans. Br. at 16.)  Here, the evidence shows that the Postal Service immediately (the same day) began its investigation of the incident between Plaintiff and Ms. Thomas, and that it took statements from the witnesses.  (Op. Br. at 5-6.)  Plaintiff also claims that when Tasha Palmer, a black employee, complained, "[a]n immediate investigation (including interviews) occurred."  (Ans. Br. at 16.)  The same thing happened here.  (Op. Br. at 5-6.)  Plaintiff claims that when Eugenia Ross, a black employee, complained about a co-worker, the Postal Service immediately removed the co-worker from the building pending an investigation.  (Ans. Br. at 16.)  The same thing happened here.  (Op. Br., Def.'s App'x at 8 (Plaintiff testifying that she and Ms. Thomas were sent home following the incident).)  Accordingly, Plaintiff has not shown that the Postal Service investigates complaints differently based on the race of the complainer.

What Plaintiff is really upset about is that the fact that the Postal Service did not believe her version of the incident with Ms. Thomas.  (Op. Br. at 6.)  However, that fact does not show disparate treatment, especially given that at least one disinterested witness, Bobby Ford, did not support Plaintiff's claim that Ms. Thomas physically assaulted Plaintiff.  (See Op. Br. at 6-7.)

14

Because Plaintiff has not raised an inference of discrimination, her claim should be dismissed.

**D.    *Plaintiff Has Also Failed To Show Any Connection Between Her Transfer And Either Her Race Or Her EEOC Activity.***

The Postal Service also explained in its Opening Brief that Plaintiff's discriminatory transfer claim should be dismissed because there is no evidence that the Postal Service temporarily transferred Plaintiff to the night shift for discriminatory or retaliatory reasons.  (Op. Br. at 26.)  Notably, the Postal Service moved all five of the newly-converted FTRs from the afternoon shift to the night shift, which included Plaintiff and at least three black females.  (Id.)

In response, Plaintiff claims she has raised an inference of discrimination or retaliation because, Plaintiff alleges, there was no "similar transfer" in connection with the twenty-five FTR promotions over the past seven years.  (Ans. Br. at 34.)  Plaintiff's argument misses the point. To raise an inference of discrimination, Plaintiff must show disparate treatment with respect to her protected class or EEOC activity.  See EEOC v. Metal Serv. Co., 892 F.2d 341, 347 (3d Cir. 1990) (a disparate treatment violation is made out when "an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criteria under Title VII.").  However, Plaintiff provides no evidence at all of the race or EEOC activity of the twenty-five other employees who were supposedly treated more favorably than Plaintiff.  Thus, Plaintiff has not shown any relevant disparate treatment.

Moreover, the fact is that when Plaintiff was promoted and tranfered to the night shift, so were all the other newly-promoted FTRs, including at least three black females.  Thus, Plaintiff has failed to raise an inference that, in September, 2004, the Postal Service treated her differently based on her race or EEOC activity.  Thus, Plaintiff's claims should be dismissed.

15

## CONCLUSION

For all of the above reasons, the Postal Service respectfully requests that summary judgment be entered in its favor and that Plaintiff's claims be dismissed.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By:＿＿＿/s/ Seth M. Beausang＿＿＿＿＿＿
Seth M. Beausang (De. I.D. No. 4071)
Assistant United States Attorney
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
(302) 573-6277

Attorney for the Postal Service

16

EXHIBIT A

# TITLE PAGE

Janet Jeffries                )
2148 Seeneytown Road          )
Dover, Delaware 19904-1653    )
                              )
                              )
       Complainant            )
                              )
                              )
                              )       **Agency Case No: 1C-081-0017-04**
                              )       **Filed on February 18, 2004**
                              )
       v.                     )
                              )
John E. Potter,               )
Postmaster General            )
United States Postal Service  )
C/O Eastern Area Operations   )
Warrendale, PA  15095-3000    )
       __Agency__             )


## Investigative Report


This investigative report was prepared by the undersigned investigator and submitted to the agency on this, 14th day of October 2004

Meryl Smith-Green
EEO Investigator
4955 Columbia Road Suite F
Columbia, Md. 21044-1660

## NOTICE OF RESTRICTED USAGE

Access to, and usage of, this EEO complaint file is **RESTRICTED** by both the Freedom of Information Act and the privacy Act to: (1) the Complainant (and his or her representative) and (2) Government officials who must have access to the files to discharge their OFFICIAL duties. The file and its contents must be safeguarded.  Willful violations of these requirements are subject to criminal penalties (5 U.S.C. 552a{1}).

JANET JEFFRIES                           AGENCY CASE # 1C-081-0017-04

## Index And Exhibits

| Document | Page # |
|---|---|
| Index of File | 2 |
| List of Affidavits | 2 |
| List of Exhibits | 3 |
| Investigative Summary | 4-9 |

## Affidavits

A.   Janet Jeffries                      Automation Clerk PS- 05
     Complainant                         Delaware Processing & Distribution Center
     Race, (Caucasian)                   147 Quigley Blvd.
                                         New Castle, Delaware 19850-9997

B.   Doris Perry                         Clerk/Shop Steward PS-05
     Witness                             Delaware Processing & Distribution Center
     Race, (White)                       147 Quigley Blvd.
                                         New Castle, Delaware 19850-9997

C.   John Williams                       Manager Distributions Operations EAS-19
     Witness                             Delaware Processing & Distribution Center
     Race, (African American)            P.O. Box 1000
                                         Wilmington, De. 19850-9997



**JANET JEFFRIES**                               **AGENCY CASE # 1C-081-0017-04**

**Exhibits:**                                                          **# of Pages**

1.   PS Form 50 for Janet Jeffries dated 01/24/04                          1

2.   Statement of Manager Angelo Lambert dated 11/27/03                    1

3.   Statement of Janet Jeffries dated 11/12/03                            3

4.   Statement of Delores Thomas dated 11/11/03                            4

5.   Statements of Karen Bayard, witness dated 11/11/03, 11/15/03,         6
     012/28/03, and 1/03/04

6.   Statement of Bobby Ford, witness, dated 11/26/03                      1

7.   Statement of Lynnette Marron, witness, dated 11/11/03                 3

8.   Employee Labor Relations Manual Section 666.2., Behavior
     and Personal Habits                                                   1

9.   October 28, 2003 Zero Tolerance Memorandum                           1

10.  Publication 45, A Violence Free Workplace                             1

11.  Compensatory damages affidavit dated **08/15/04** from
     Complainant's husband                                                 4

12.  List provided by Complainant regarding compensatory damages          1

13.  Billing statement for Janet Jeffries from Kim Furtado,
     Naturopathic Physician dated 11/13/03 and 03/13/04                    2

14.  Recommendations for herbs and treatments for Janet Jeffries
     from Kim Furtado dated 03/13/04                                       1

15.  Medical Prescription provided by Janet Jeffries dated 03/03/04        1

16.  Receipts and Invoices provided by Janet Jeffries
                                                                           3

**Investigative Summary
Page 3 of 9**

**JANET JEFFRIES**                          **AGENCY CASE # 1C-081-0017-04**

### INVESTIGATIVE SUMMARY

**Statement of Claims(s) and issues to be investigated:** The Complainant alleged discrimination based on color (Caucasian) when: on November 11, 1993, she was verbally assaulted by another employee and management failed to take any action.

Complainant requests that the Postal Service provide her with a permanent Tour II re-assignment, with a guarantee of eight hours of work, forty (45) days administrative leave, and one hundred and fifty thousand dollars.

**(1) Disparate Treatment Claim:** Management failed to take action when Complainant was verbally and physically assaulted

**Affidavit Testimony (Color, Caucasian):**

Complainant, Janet Jeffries, color (Caucasian) is an Automation Clerk at the Delaware Processing & Distribution Center (P& DC) in New Castle, Delaware. Complainant states that on November 11, 2003, she was verbally and physically assaulted by her coworker, Delores Thomas, race (Black).

Complainant stated Thomas made defamatory references to her family, used profanity on the workroom floor, and then followed her into the ladies locker room and challenged her to a fight. Ms. Jeffries said she told her supervisor; Anne Thomas that she felt threatened, and wanted to do a statement.

Complainant asserts that she reported the incident to Manager of District Operations Angelo Lambert, race (Black) and told him that she felt threatened. She said that she requested a meeting with Ms. Thomas, herself and MDO Lambert, which took place that night. The meeting had to be ended when Thomas began cursing again. Complainant testifies that another meeting was held on 11/26/03, at which time she was accompanied by her Union Representative Doris Perry, race (White), and attended by MDO Lambert, and MDO Williams. At that meeting Complainant said she asked Manager Williams what he would do if she acted like Delores Thomas, and Mr. Williams stated "I would fire you, Mrs. Jeffries".

Complainant testifies that after approximately three weeks, management conducted interviews. She stated she requested to be moved out of the area and to a different tour, but was denied.  [Affidavit A]

**JANET JEFFRIES**                    **AGENCY CASE # 1C-081-0017-04**

*Investigators Note: Doris Perry's response to an affidavit request was "see attached letter" August 09, 2004 statement.*

Doris Perry, Union Shop Steward, race (White), stated that on November 26, 2003, Complainant sought her help regarding an altercation between herself and [coworker] Delores Thomas. Ms. Perry testifies that she arranged for a meeting with John Williams, MDO, complainant, and herself. At this meeting, Ms. Perry related that Ms. Jeffries explained that she felt uncomfortable, and threatened by Ms. Thomas. Ms. Perry stated that at the meeting Mr. Williams "tried to explain what Ms. Thomas meant by the derogatory remarks ". Ms. Perry said that both employees were issued letters of warning, but Williams pulled [retracted] Ms. Jeffries [discipline] because she filed an EEO complainant against him". [Affidavit B]

John Williams, race (African American), MDO at the Delaware P& DC, in Wilmington, Delaware stated that he is the Manager of the tour that Complainant works. Mr. Williams said that Ms. Jeffries informed him of an incident that occurred between her and Ms. Thomas a few days after November 11, 2003. According to Mr. Williams, Complainant told him that Delores Thomas was verbally abusive towards her, used profanity, and hit her with a flat tub. Mr. Williams advised Complainant that he would investigate and get back to her.

Mr. Williams described the investigation that took place, which involved getting statements from witnesses mentioned by Ms. Jeffries and Ms. Thomas. Manager Williams testifies that he met with the Complainant, along with MDO Lambert, and union official D. Perry, and also met with D. Thomas, along with MDO Lambert, and Ms. Perry. Mr. Williams stated that the investigation was concluded on December 3, 2004. He said that after the investigation he met with Labor Representatives I. Morris and D. Kelley-Brown and that their recommendation was to give both employees a Letter of Warning for inappropriate behavior in the work place, however in the middle of December he received information that Ms. Jeffries had filed an EEO complaint, and he decided not to go through with issuing the letter of warnings, because it could appear to be issued as a result of the filing with EEO. He stated that he asked if he should go ahead with a letter of warning for Delores Thomas, but Labor told him it would be untimely, and therefore no corrective action was taken against either employee. Mr. Williams explained that the "zero policy was not followed as it should have because of the EEO that preceded and because the corrective action would be untimely".

Mr. Williams stated that based on his investigation, he could not determine that anyone observed Ms. Thomas hitting/striking Janet Jeffries with a flat tub, and that both employees used inappropriate language.

Manager Williams was asked whether he had disciplined other employees in similar situations, information about the incidents, and subsequent actions. Mr. Williams stated in response to these questions hat he does not recall any similar incidents where similar discipline was taken. [Affidavit C]

**JANET JEFFRIES**                    **AGENCY CASE # 1C-081-0017-04**

**Record Evidence:**

PS Form 50 dated 01/24/04 establishes Janet Jeffries as a Flat Sorter Machine Operator at the Wilmington Processing and Distribution Center in Wilmington, Delaware. [Exhibit 1]

Angelo Lambert provided a statement for management investigation dated 11/ 27/03, which reads that on November 11, 2003 he was the MDO on duty. He stated that he was passing by the flat sorter area when he was approached by Ms. Jeffries who told him she was having a problem with another employee, Delores Thomas.

Manager Lambert wrote that employee Thomas came up to him, and told him she was having problems with Complainant Jeffries. Manager Lambert said in his statement that he brought both employees down to his office, and gave each a chance to tell their accounts as to what took place. He writes that while he was attempting to work out their differences, Ms. Thomas became loud, which aggravated Ms. Jeffries, and asked each employee whether they felt threatened; Ms. Thomas said no, Ms. Jeffries said yes, and he arranged for each to provide a signed statement. In his statement, Mr. Lambert said that he informed both employees that he was going to turn over [the information] to lead MDO John Williams. [Exhibit 2]

Janet Jeffries' provided a statement for managements investigation, dated 11/12/03, which states that she was working the Flat sorter [machine] when, Delores Thomas told her "not to talk to her like she was one of her fucking kids". Jeffries related that she asked "what did you call my kids?" and that Thomas did not respond but ran into her with the tub she was holding. Jeffries related that she tried to diffuse the situation by asking Thomas what was wrong. She said in her statement that that Karen B. and Lynette came over and tried to get [Ms. Thomas] to stop yelling, but she continued screaming.

Ms. Jeffries goes on to write that she then went to the Locker Room for her lunch break; Ms. Thomas came in, and called her a big baby, because she had told [MDO] Angelo Lambert about the confrontation. Complainant related that "she threw more F's my way, and I said F-U back". Complainant alleges that Thomas said to her that "she had her head stuck up the Supervisors ass and liked it too". According to Complainant, Thomas told her to "suck her ass", and she told Thomas to" get her boyfriend to do it", after which Thomas said, "come on". Complainant statement states that Ann [Supervisor] came in to the locker room, and asked if she felt threatened, and if she wanted to make a statement. Complainant indicated that she and Ms. Thomas met with Angelo Lambert, but that the "yelling began again" and that Lambert ended the meeting. [Exhibit 3]

**JANET JEFFRIES**                    **AGENCY CASE # 1C-081-0017-04**

On 11/ 11/03 Delores Thomas provided a statement as part of the management investigation. This document shows that Ms. Thomas wrote that that she doesn't know what "set her [Complainant] off when she asked me, what [my] problem was?" She stated that they both exchanged heated words. She went on to write that heated words continued, and Ann Thomas [Supervisor] was called in, and she told her what happened. Thomas wrote that Manager Angelo Lambert asked her if she felt threatened [by Complainant], and she told him no, she had no problem working and that as far as she was concerned it [the issue] was dropped. [Exhibit 4]

Karen Bayard [witness] wrote four statements for the investigation of the incident. On 11/15/03; she wrote that she heard Delores yelling and cursing at Janet, and that she observed Delores grab two tubs [of flats], and push her way past Janet. Ms. Bayard related in her statement that she and Lanett [coworker] went with Complainant to tell MDO Angelo Lambert what had happened.

In a second set of statements made on 12/28/04, Ms. Bayard reiterated that after reporting to MDO Lambert [she, Complainant, and Lanett] went to the locker room for lunch, and that Delores continued to "make a scene", telling Janet, "I'm not one of your fuckin kids". She relates in this statement that Janet asked [Delores] not to bring [my] children into this, and Delores said, "Janet, you can kiss my ass". Ms. Bayard wrote that the Complainant remained seated as Delores continued to yell at her, and told "her to suck it". She related that Janet retorted, "never in a million years, and she should get her man to do it". Ms. Bayard also wrote that Delores made another insult, and said "something to the effect that she could kick Janet's ass, or break her up (something in that vein of thought), stormed out of the locker room, saying fucking bitch, you fucking baby"
Ms. Bayard also wrote that that on the day of the incident, she went down to the MDO's office to give a written and verbal account of what transpired. She wrote that as a former 204B; she knew that witnesses were supposed to give statements so that an investigation could be conducted in a timely manner.
She explained that subsequent to writing her statement, she was told by Lambert that he didn't need a statement from her, but that three days later she was called in to the office to give a statement. In two statement dated 1/03/04, and 08/16/04 by Ms. Lambert reiterates what she had written previously. [Exhibit 5]

Bobby Ford [witness] provided a statement for management's investigation dated 11/26/03. He wrote that he heard Delores and Janet arguing and that Thomas was "going off on Jeffries". Ford wrote that the only thing he heard Janet say was "what's the problem?" and Delores kept cursing and yelling at Janet. [Exhibit 6]

**JANET JEFFRIES**        **AGENCY CASE # 1C-081-0017-04**

Lynette Marron [witness] provided a statement for management's investigation dated 11/11/03. Ms. Marron wrote that Ms. Thomas and Ms. Jeffries were bickering about something. She wrote that she and others tried to settle whatever it was that caused the situation, and it seemed like another emotional moment between two women, [which was] nothing unusual [as it] happens all the time. In an additional statement written by Lynette Marron on 11/11/03. She added that she observed "Thomas berate Ms. Jeffries inside the locker room, using humiliating and profane language that "shocked and amazed her". [Exhibit 7]

**Applicable Policies:**

Employee Labor Relations Manual Section 661.2 outlines the behavior and personal habits of all employees. This section states, in part, "employees are expected to conduct themselves during and outside working hours in a manner which reflects favorably upon the Postal Service". It also states: "Employees are expected to maintain satisfactory personal habits so as not to be obnoxious or offensive to other persons or create unpleasant working conditions." [Exhibit 8]

October 28, 2003 Memorandum For: All Employees states that: There will be zero tolerance for acts or threats of violence in our workplace. The memorandum goes on to say "Each and every act or threat of violence from this day forward will elicit an immediate and firm response that could, depending on the severity of the incident, include removal from the Postal Service". [Exhibit 9]

Publication 45 addresses A Violence Free Workplace, and advises employees to "report all threats to management officials". It advises, "Your supervisor or manager should conduct a prompt, thorough inquiry of your concern, keep you informed, and take appropriate action to resolve the situation". [Exhibit 10]

**Compensatory damages**

**Affidavit Testimony**

Complainant provided Form 2569-C, EEO Investigative Affidavit for Compensatory Damages. She stated that she has experienced financial difficulties because of the alleged discrimination, including counselor fees, physical and psychological therapy, counselor visit travel expenses, and medications, as well as costs associated with the filing of the complaint.
She stated that she has used annual, sick leave, and extra non-scheduled (non-paid) days off.

**JANET JEFFRIES**                    **AGENCY CASE # 1C-081-0017-04**

Complainant states that she has experienced associated symptoms of stress and anxiety, including headaches, muscle pain, chest pain, jaw clenching, and sleeplessness, nervousness, frustration and anger, embarrassment and vulnerability. According to Complainant her symptoms are intermittent, and occur at various levels of intensity. Complainant said that she has been taking medication to relieve jaw pain.

Complainant's husband, daughter, and son provided a statement, which said that they have seen a toll on Ms. Jeffries health, and stated that, "We have shared in her anger, frustration and pain, and our family life has suffered [Exhibit 11]

**Record Evidence (Compensatory Damages):**

Complainant provided a list of dates and costs of visits to Kim Furtado, N.D, and a Naturopathic Physician. [Exhibit 12]

Billing statements from Kim Furtado, N.D, dated 11/13/03 in the amount of $175.00, and 03/13/04 in the amount of $123.00. Statements show that both bills were paid. [Exhibit 13]

Kim Furtado, N.D provided a list of recommendations to complainant regarding her health. These recommendations included herbal remedies, guided imagery for relaxation, and Tai Chi classes. [Exhibit 14]

Pharmacy prescription for Janet Jeffries dated 03/03/04 [Exhibit 15]

Receipts and Invoices provided by Janet Jeffries dated 03/15/03 and 03/10/03, for "de-stress" aids [Exhibit 16]